### BROADY v. ILLINOIS CENT. R. CO.
No. 10338.

United States Court of Appeals
Seventh Circuit.
July 25, 1951.
Writ of Certiorari Denied Dec. 11, 1951.

Edward J. Fruchtman, Chicago, Ill., Cotton, Fruchtman & Watt, Chicago, Ill., of counsel, for plaintiff.

Herbert J. Deany, Chicago, Ill., J. H. Wright, C. A. Helsell, and John W. Freels, all of Chicago, Ill., of counsel, for defendant.

Clarence M. Mulholland, Toledo, Ohio, Edward J. Hickey, Jr., Washington, D. C., Richard R. Lyman, Toledo, Ohio, Mulholland, Robie & Hickey, Toledo, Ohio, J. W. Brown, Ben Gettler, Cincinnati, Ohio, of counsel, for amici curiae.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

By this appeal, the Illinois Central Railroad Company seeks to reverse a judgment entered by the United States District Court for the Northern District of Illinois, Eastern Division, against it, in favor of Royal M. Broady, appellee, one of its dining car employees, for the sum of $9,224.67.

In the complaint filed on January 8, 1948, the appellee, Royal M. Broady, states that his action arises under the Railway Labor Act, 45 U.S.C.A. § 151 et seq.; that he is a resident of the State of Illinois, and was at all relevant times employed by defendant who owned and operated a railroad in interstate commerce; that appellee was employed as a dining car waiter in interstate commerce; that on September 17, 1947, he was charged with violating the general rules 11, 13 and 36 for dining car service, because it was said that while on duty he refused to perform service for certain parties who were occupying his station in the diner, and made remarks which were embarrassing to both the patrons and his employer; that a hearing of the charges against him was held in the office of the Dining Car Service of the defendant carrier on September 23, 1947; that under the terms of said Act, an employee of a carrier has the right to be represented at such hearing by a representative of his own choosing; that at said hearing, on September 23, 1947, the appellee was not permitted to be heard by a representative of his own choosing and was thereby denied a hearing according to due process of law; that because of such denial plaintiff refused to participate in such hearing and was discharged, losing six years of seniority.

Appellee then prays that he be restored to his position with defendant as a dining car waiter with six years seniority, and that he may be awarded back wages lost to him because of his alleged illegal discharge.

In its answer the defendant-appellant denies that plaintiff has a cause of action against defendant arising under the Railway Labor Act. It is admitted that on September 17, 1947, plaintiff was charged with violating rules 11, 13 and 36 of general rules for dining car service, in that on September 14, 1947, while on duty, plaintiff refused to perform certain waiter service, and made remarks which were embarrassing to defendant's patrons and to the railroad, as alleged in the complaint. It is admitted that a hearing was held on such charges on September 23, 1947.

The answer then sets out verbatim the provisions of article 25(d) of the terms and provisions of the schedules with the Union which was appellee's bargaining representative. The answer admits that the representatives chosen by appellee were not permitted to be heard at the hearing of September 23, 1947, but it is denied that appellee complied with the Railway Labor Act or with the terms of the schedule under which he was employed.

The answer concludes by asserting that plaintiff is not entitled to judgment in this proceeding against the defendant either to

the extent claimed or to any extent whatever by reason of the matters and things in said complaint alleged, in manner and form as they are therein set forth.

Thereafter, and before trial, plaintiff amended the prayer for relief so that it read as follows:

"Wherefore, plaintiff prays judgment against defendant as follows:

(1) That plaintiff be restored to his position with defendant carrier as a dining car waiter with such seniority standing as he would have enjoyed if the aforementioned illegal discharge had not taken place; and

(2) That plaintiff be made whole for the said illegal discharge by payment to him of all back wages lost to him as a result of said illegal discharge."

The case proceeded to hearing by the court without the intervention of a jury. There is little, if any, conflict on the facts disclosed by this record. Appellee, a citizen of Illinois, was employed by appellant as a waiter in its dining car service. The terms of his employment were governed by a collective bargaining agreement negotiated pursuant to the Railway Labor Act between the defendant carrier and the collective bargaining agent of his choice. This contract became effective in 1937.

Plaintiff was a member of the collective bargaining agent, Dining Car Employees Union, local 351, but had not paid dues for upwards of a year. The bargaining agreement provided in article 25 thereof in reference to discipline:

"(a) Employees charged with having violated the Company's rules, if proven guilty, may be subjected to proper discipline in accordance with the provisions of this article.

"(b) Employees will not be dismissed from the service until after a fair and impartial investigation has been held. Investigations will be held within 20 days from the date the Superintendent Dining Service has knowledge of the offense, and a decision shall be rendered within 3 days after investigation. Employees may not be suspended to exceed 10 days pending investigation, unless investigation is delayed by the employees.

"(c) Employees shall be notified in writing within 10 days after the Superintendent Dining Service has information of offense that a charge is pending, such charge to contain a clear and full statement of the cause of complaint. Within 10 days thereafter, investigation shall be held if desired by the Company, and a decision shall be rendered within 3 days after investigation. If investigation is not held within the time specified, no investigation or action will be taken on the charge, except when the investigation is delayed at the request of the employees.

"(d) Employees shall have the right to be present and may arrange, at their expense, to have an employee of their choice at hearings or investigations to hear the testimony, who may ask questions of the witnesses to bring out facts pertinent to the case. Employees shall also have the right to have present, at their expense such witnesses as they desire to give testimony.

"(e) In case of censure, discipline or dismissal, the employee or his representative may appeal to the Manager of Personnel or other officer designated by the Company, if he so desires, and if in case of dismissal it is found unjust, the employee shall be reinstated and paid for all time lost."

On September 17, 1947, plaintiff was given written notice that he was charged with the violation of General Rules 11, 13 and 36 while on duty in dining car 4106, train 2, on September 14, 1947, in that he refused to perform waiter's services to certain patrons occupying seats at his station, and with making remarks to such persons embarrassing to them and to the railroad. The notice informed him that an investigation would be held on September 23, 1947, at 1:30 P. M. He was directed to be present and was informed that he was entitled to employee representation of his own choice.

Rules 11, 13 and 36 are incorporated in the record, together with a receipt from plaintiff for a rule book containing them. Rule 11 provides that "civil, courteous deportment is required of all employees in their dealings with the public, their superiors and fellow workers. Courtesy and attention to patrons is demanded. Employees

must not enter into any altercation or fight with any person, no matter what the provocation." Rule 13 states "The fact that patrons are at times impolite and unreasonable requires an exercise of patience on the part of employees and under no circumstances justifies similar conduct in return. Arguments with patrons will not be tolerated." Rule 36 states that "Employees who are insubordinate, dishonest, immoral, quarrelsome or otherwise vicious, or who conduct themselves in such a manner or handle their personal obligations in such a way that will subject the railroad to criticism and loss of good will, will not be retained."

On September 23, 1947, the date set for the investigation, appellee appeared with two officers of a rival union, whom he wished to have as his representatives. These men were not qualified representatives under the collective agreement because they were not employees of the defendant carrier. When the terms of the agreement were pointed out to appellee, and he was informed that he could be represented at such investigation only by an employee of the railroad, he and his assistants withdrew from participation in the investigation. Thereafter, on the next day, September 24, appellee was notified of his discharge effective on that date. He took no further action until the 8th day of January, 1948, when this suit was instituted.

The District Court in its findings of fact made no findings as to the alleged improper conduct in violation of rules 11, 13 and 36, which form the basis of the September 23rd investigation by officials of the Dining Car Service of the defendant company. The evidence in the record discloses that the steward of the diner on which plaintiff was employed September 14, 1947, had his attention directed to a quarrel taking place at the table at which appellee was a waiter. A guest at said table claimed he had ordered brisket of beef. Appellee, Broady, said, "No, you ordered a ham sandwich." The guest insisted he had ordered brisket of beef. Appellee then said in a loud voice: "I won't wait on these people. They are drunk. Get someone else to wait on them." Broady then left and the steward procured another waiter to serve the party. The dining car order slip indicated that the guest had in fact ordered brisket of beef. Broady did not deny shouting in a loud voice that the guests were drunk; he claimed that one of them, after being informed where he was from, said: "I don't like Northern negroes"; he also said he feared one of the guests involved was about to throw a sugar bowl at him.

He did not, however, prosecute an appeal to the manager of personnel or to any other official of the company, nor did he seek an adjustment of his alleged grievances because of his discharge and loss of seniority rights before the Adjustment Board, as provided for in the Railway Labor Act. Instead he filed this proceeding.

We have heretofore set out in some detail the allegations of this complaint, which as we have indicated, was heard by the court, which entered the judgment that Royal M. Broady recover of the defendant the sum of $9,224.67, with costs and interest from the date of the judgment, and that he have execution therefor. The decisive question involved in this appeal is, did the District Court have jurisdiction to enter the judgment of which appellant complains?

We can find no provision of the Railway Labor Act which gives to employees the right to a representative of their own choice at an investigation by company officials of a charge that the employee has violated company rules. In the case at bar, appellee's right to representation comes from the agreement of appellant and Dining Car Employees Union, local 351. The relevant provisions of the Railway Labor Act, sec. 3, 48 Stat. 1185–1189–1193, 45 U. S.C.A. § 153, are as follows:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by

petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

"(j) Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them.

\* \* \* \* \* \*

"(p) If a carrrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. \* \* \* The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board."

█ It appears to us under the above provisions of the Railway Labor Act that the employee's right to representation thereunder, when an investigation of a breach of company rules is involved, would arise only when the officials of the company have completed their inquiry and entered a finding unsatisfactory to the accused employee. Then, and only then, is he entitled under the Act itself, to a hearing before the Adjustment Board.

█ "The provisions of the Railway Labor Act \* \* \* do not 'interfere with the normal exercise of the right of the carrier to select its employees or to discharge them'." Virginian Railway Co. v. System Federation, No. 40, 300 U.S. 515–559, 57 S. Ct. 592, 605, 81 L.Ed. 789, citing Texas &

New Orleans Railway Co. v. Brotherhood of Ry. & S. Clerks case, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. We believe the carrier also has the right to discipline its employees.

In Brooks v. Chicago, R. I. & P. R. Co., 177 F.2d 385, The Court of Appeals for the 8th Circuit said on page 391 of 177 F.2d: "The Railway Labor Act does not empower the courts to enforce against railroads any prescribed procedure for investigating and discharging its employees, nor does it empower the courts to entertain original actions to compel railroads to reemploy or give back pay to discharged employees. \* \* \*"

In Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, on page 240, 70 S.Ct. 577, 94 L.Ed. 795, the Supreme Court said: "Section 3 of the Railway Labor Act confers jurisdiction on the National Railway Adjustment Board to hold hearings, make findings, and enter awards in all disputes between carriers and their employees 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions \* \* \*.' [Citing 48 Stat. 1185, 1189–1193, 45 U.S.C.A. § 153.] The question presented is whether state courts have power to adjudicate disputes involving such interpretations when the Adjustment Board has not acted."

Further on, in this opinion on page 243, of 339 U.S., on page 579 of 70 S.Ct., 94 L.Ed. 795, the Supreme Court said: "The paramount importance of having these chosen representatives of railroads and unions adjust grievances and disputes was emphasized by our opinion in Order of [Ry.] Conductors v. Pitney [326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318]. There we held, in a case remarkably similar to the one before us now, that the Federal District Court in its equitable discretion should have refused 'to adjudicate a jurisdictional dispute involving the railroad and two employee accredited bargaining agents \* \* \*.' Our ground for this holding was that the court 'should not have interpreted the contracts \* \* \*' but should have left this question for determination by the Adjustment Board, a congressionally designated agency peculiarly competent in this field.

* * * This reasoning equally supports a denial of power in any court—state as well as federal—to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act."

See also Order of Railway Conductors of America v. Southern Railway Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811. That was certiorari to the Supreme Court of South Carolina. Southern Ry. Co. v. Order of Ry. Conductors of America, 215 S.C. 280, 54 S.E.2d 816. It raised the same statutory question as had arisen in the Slocum case. The petitioner was the accredited bargaining agent of the conductors employed by the carrier involved. A dispute arose between certain conductors and the railroad concerning the carrier's obligation under the collective-bargaining agreement to give conductors extra pay for certain services. The claims of the conductors were referred to the union, which sought by negotiation to persuade the railroad to pay. The railroad refused, and thereafter prayed for a declaratory judgment in a South Carolina court, construing the agreement as not requiring the claimed payments. The trial court of South Carolina at the first hearing refused to exercise jurisdiction. The State Supreme Court reversed, holding that the state court did have power to interpret the bargaining agreement and adjudicate the dispute. After a remand and trial, the lower court held that the collective agreement did not require the compensation sought by the conductors and entered the declaratory judgment requested. The Supreme Court affirmed.

The Supreme Court of the United States said, 339 U.S. on page 256, 70 S.Ct. on page 586, 94 L.Ed. 811: "For reasons set out in the Slocum case, * * * we hold that the South Carolina state court was without power to interpret the terms of this agreement and adjudicate the dispute."

■ In the light of these authorities we can do nothing but hold that the District Court was without jurisdiction to restore plaintiff to his position as waiter in the dining car service of appellant, or to award back wages because of his alleged wrongful discharge.

In this appeal, however, appellant now asserts that his suit is one for wrongful discharge. Let us assume that it is. He relies greatly on Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. In the Moore case, the Supreme Court said there was nothing in the Railway Labor Act which purported to take away from courts their jurisdiction to determine a controversy over the wrongful discharge of an employee by his employer. On page 635 of 312 U.S., on page 756 of 61 S.Ct., 85 L.Ed. 1089, the Court said: "* * * the legislative history of the Railway Labor Act shows a consistent purpose on the part of Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature. The District Court and the Circuit Court of Appeals properly decided that petitioner (Moore) was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge. * * *"

■ There is no doubt that under the authority of the Moore case plaintiff on his alleged wrongful discharge by appellant had an option of pursuing his remedy under the Railway Labor Act or of bringing suit as at common law in an action for damages for wrongful discharge. But it must be remembered that in the Moore case there was diversity of citizenship. That was the basis of federal jurisdiction in that case.

In the case at bar there is no diversity of citizenship. The record plainly shows that the appellee is a citizen and resident of the State of Illinois, and it is an historic fact that the Illinois Central R. Company is an Illinois corporation, chartered February 10, 1851, in order to take advantage of the Congressional grant of lands to the States of Illinois, Mississippi and Alabama for the construction of the railroad from Chicago to Mobile. See Act Sept. 20, 1850, 9 U.S. Stat. at Large, page 466, and Ill.Const. of the State of Illinois 1870, Separate sec. 1, S.H.A. Consequently, in the case at bar there is no diversity of citizenship. We have therefore two actions on behalf of the plaintiff-appellee, claimed to be based upon his complaint, one seeking that he be re-

stored to his position as waiter in the dining car service with proper seniority, and that he be awarded back pay; the other seeking damages as at common law for wrongful discharge.

The District Court had jurisdiction of neither cause of action, consequently its judgment is reversed and the cause is remanded to that court with directions to dismiss the complaint.