**RICHARDSON**

v.

**OZARK AIRLINES, Inc.**

No. 43730.

Supreme Court of Missouri.

Division No. 2.

July 12, 1954.

E. Gary Davidson, Clayton, for appellant.

Barak T. Mattingly, Norman Begeman, Owen T. Armstrong, St. Louis, Lowenhaupt, Mattingly, Chasnoff & Stolar, of counsel, for respondent.

BROADDUS, Special Judge.

This is a suit for specific performance of a contract of employment. Plaintiff is an airline pilot. He entered the employ of defendant Ozark Air Lines on January 10, 1951, and was discharged January 1, 1952. He prayed in his petition that the court order defendant to restore him to his former position with his seniority rights unimpaired, and for judgment for loss of pay amounting to $9200. At the conclusion of plaintiff's case the court sustained defendant's motion to dismiss with prejudice and entered judgment accordingly. Plaintiff appealed.

During the time plaintiff was in defendant's employ there was in effect an agreement between defendant and the Air Line Pilots Association, a pilot's union, which was made in accordance with the Railway Labor Act, 45 U.S.C.A. § 151 et seq., for the benefit of all persons employed as pilots by the defendant company. The agreement prescribed compensation schedules, seniority rules, and working hours, and included also provisions on miscellaneous subjects, which are not here material. It did not include any provisions with reference to continuation of employment or discharge except Section 26, which is the provision around which the present controversy revolves. That section provides in substance as follows:

(1) A pilot shall not be disciplined or dismissed without notification in writing, and if he makes written request within ten days after receiving such notification he shall not be dismissed or disciplined without an investigation and hearing. (2) Nothing shall prevent the company from holding the pilot out of service prior to notification. (3) An investigation and hearing by a junior operating official of the company shall be held within seven days after the pilot's written request. (4) Prior to such investigation and hearing, the company shall furnish the pilot with a copy of the precise charges against him. (5) A written decision shall be announced within seven days after the hearing and a copy thereof furnished to the pilot. (6) Within seven days after the receipt of such decision, the pilot shall have the right to appeal to the Vice-President in Charge of Operations, and a hearing thereon shall be held within seven days after receipt of such request. (7) Within ten days after the hearing, the company shall announce its decision in writing and furnish a copy to the pilot. (8) Any

decision made by the company and not appealed from by the pilot shall be final and binding. (9) If a pilot shall be exonerated as a result of a hearing on appeal, he shall be reinstated without loss of seniority and shall be paid for such time lost in an amount which he would have ordinarily earned. (10) In the event the decision is adverse to the pilot he shall, within thirty days thereafter, be allowed a further appeal to the System Board of Adjustment as provided by a separate agreement between the defendant and the Air Line Pilots Association, dated March 15, 1951.

The latter agreement, embraced in the original contract by reference, establishes a System Board of Adjustment pursuant to the provisions of Section 204 of the Railway Labor Act. It gives the board jurisdiction over disputes growing out of the application of the terms of the underlying agreement, provides the mechanics for submitting disputes to the board, provides that hearings shall be held thereon, and that decisions of the board shall be final and binding.

Said Section 204 which gives authority to such System Board of Adjustment is applicable particularly to carriers by air. It is a counterpart of the section of the Railway Labor Act, 45 U.S.C.A. § 153, which applies to railroads. The latter provision establishes a National Railroad Adjustment Board for the hearing and adjustment of disputes between railroads and their employees. Section 204 provides that system boards of adjustment shall be created by agreement between carriers and groups of employees, the jurisdiction of which shall not exceed that exercised by corresponding boards established under the terms of Section 153.

On December 7, 1951, plaintiff received a letter from defendant advising him that he had been removed from "flight status" because of an incident concerning the landing of an airplane by plaintiff at Champaign, Illinois. On December 10, 1951, defendant wrote plaintiff another letter advising him of, and quoting in part, a report made by a co-pilot of an incident concerning the handling of aircraft at East St. Louis, Illinois. On December 11, 1951, plaintiff received another letter from defendant notifying him that a hearing would be held on December 14th. As a result of that hearing plaintiff's services with defendant were terminated effective January 1, 1952. After appealing without success to defendant's operating manager plaintiff, on January 19, 1952, availing himself of the provisions of the union agreement took an appeal to the System Board of Adjustment. By letter dated February 14, 1952, the Board notified plaintiff of its decision to uphold the original decision of the defendant's senior operating official.

Plaintiff asserts that he was never advised of the precise nature of the charges against him and that none of the above hearings were conducted in a fair and impartial manner. He contends that, having exhausted his administrative remedies under his contract of employment, he is entitled to the equitable relief sought. We do not think so.

■ It is a familiar and well-established doctrine that courts of equity will not exercise jurisdiction to grant a decree of specific performance of a contract for personal services. 49 Am.Jur. page 156; 81 C.J.S., Specific Performance, § 82, p. 591; Pomeroy's Specific Performance, 3d Ed., Sections 22 and 310; Pomeroy's Eq.Jur., 5th Ed., Vol. 4, page 1038; Beach v. Bryan, 155 Mo. App. 33, syl. 3, 133 S.W. 635; Falder v. Dreckshage, Mo.App., 227 S.W. 929. See also 135 A.L.R. beginning at page 285 where the reasons for the rule are clearly set forth.

■ Nor does the Railway Labor Act confer upon the courts any jurisdiction to order reinstatement of a discharged employee. We have found no cases in which any court has recognized jurisdiction of such a proceeding and plaintiff has cited none. Such relief has been denied in numerous cases in which discharged railroad employees attempted to enforce reinstatement in the courts rather than before the National Railroad Adjustment Board as permitted by the Railway Labor Act. One such case was Brooks v. Chicago, R. I. & Pac. R. Co., 177 F.2d 385, 391, decided by

the Eighth Circuit Court of Appeals. There the plaintiff requested the same relief as is sought by the instant plaintiff, namely, reinstatement with full rights and seniority and back pay for time lost. The opinion properly recognized the proceeding as one in equity and in affirming the dismissal of the action said: "The Railway Labor Act does not empower the courts to enforce against railroads any prescribed procedure for investigating and discharging its employees, nor does it empower the courts to entertain original actions to compel railroads to re-employ or give back pay to discharged employees."

The decision was cited with approval by the Seventh Circuit Court of Appeals in the case of Broady v. Illinois Cent. R. Co., 191 F.2d 73.

Subsequently the latter court in the case of Buster v. Chicago, M. St. P. & P. R. Co., 7 Cir., 195 F.2d 73, 74, stated:

"In Broady v. Illinois Central R. R. Co., 7 Cir., 191 F.2d 73, certiorari denied, 342 U.S. 897, 72 S.Ct. 231 [96 L.Ed. 672], we held, on authority of Slocum v. Delaware, L. & W. R. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; and Order of Railway Conductors of America v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811, that the district courts of the United States have *no jurisdiction in an action to restore a discharged railway employee to his position, or to award him back wages because of his alleged wrongful discharge.*" (Emphasis ours.)

█ There is no question but that an employee who has been actually discharged wrongfully, has an option to bring a suit for damages in the courts or seek reinstatement by the available administrative procedure. Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 and Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 580, 94 L.Ed. 795. That there is a clear distinction between these two methods of procedure is made plain in the Slocum decision, when the Court referring to the Moore case, said the

employee "could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees."

The recent decision of the United States Supreme Court in the case of Transcontinental & Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 910, 97 L.Ed. 1325, on which plaintiff chiefly relies (although holding that in Missouri, contrary to the rule prevailing in some states, an employee must exhaust his administrative remedies before bringing suit for damages in a court of law), reaffirms the distinction between suits for damages and administrative actions for reinstatement. The opinion makes it plain that the rules of law applicable to the National Railroad Adjustment Board under Part I of the Railway Labor Act are equally applicable to situations arising under Part II of the Act, involving system boards of adjustment for air carriers and their employees. The opinion quotes from both the Moore and Slocum decisions and then concludes: " * * * whereas, under the Railway Labor Act, the Adjustment Board has exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in the Slocum case, that Board does not have like exclusive jurisdiction over the claim of an employee that he has been unlawfully discharged. Such employee may proceed either in accordance with the administrative procedures prescribed in his employment contract or he may resort to his action at law for alleged unlawful discharge if the state courts recognize such a claim."

█ This is the language which apparently has led the plaintiff into the confusion between actions at law for wrongful discharge and suits in equity for specific per-

formance evident in his printed argument. It is clearly no authority for the maintenance of an equitable suit for specific performance of an employment contract which, as we should have shown, courts decline to entertain.

The action of the learned trial court was correct and the judgment is affirmed.

LEEDY, Acting P. J., and ANDERSON, Special Judge, concur.