William J. KOMAN, Respondent,

v.

Joseph O. MORRISSEY, Jr., Appellant.

No. 57229.

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1974.

Motion for Rehearing or for Transfer
to Court En Banc Denied
Jan. 13, 1975.

Wolff & Todt, Charles P. Todt, Clayton, for respondent.

Stanley M. Rosenblum, Rosenblum & Goldenhersh, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for appellant.

STOCKARD, Commissioner.

This is an action for the specific performance of an oral contract. Judgment was entered for plaintiff, but the trial court retained jurisdiction for the purpose of an accounting, to receive evidence relative to the value of certain shares of capi-

tal stock, and to enforce specific performance. The judgment and decree entered was declared to be a final judgment for purposes of appeal pursuant to Rule 82.06, V.A.M.R. The notice of appeal was filed prior to January 1, 1972. Appellate jurisdiction is in this court by reason of the amount in dispute. The parties will be referred to as in the trial court.

Plaintiff alleged in his petition that in April 1962, he was employed by the defendant to assist in the development, financing, construction and operation of multiple family residence apartments in various cities where colleges or universities were located, and also to assist in the finding of land economically feasible for such developments. It was further alleged that each of the projects was to be separately incorporated with the initial capital to be supplied by the defendant alone, or in conjunction with other investors, but in any event defendant was to hold at least 60% of the capital stock of each project; that defendant would pay plaintiff for his services a certain amount in cash on a monthly basis; and that in addition to the cash payments, defendant would cause to be "transferred and issued to plaintiff 10% of the issued and outstanding capital stock of each of such corporations." It was also alleged that plaintiff was a professional football player, and that in the agreement with defendant it was contemplated that he would continue playing football during the football season of each year because his "popularity, prominence and public image as such player enhanced his ability to secure favorable contracts and to make desirable contacts." Plaintiff then alleged that in July 1966, defendant requested plaintiff to cease playing football, and that upon plaintiff's refusal to do so, defendant terminated plaintiff's services and demanded his resignation as a director and officer of any and all corporations.

The prayer was that defendant be required to specifically perform his agreement by transferring and delivering to plaintiff 10% of the issued and outstanding stock of twelve named corporations.

Except as to certain formal allegations, the answer of defendant was a general denial. He alleged that "plaintiff was hired solely on a salary basis for an indefinite period of years, terminable at will, to perform certain continuous and regular services requiring constant attention to construction details," but that such performance by plaintiff was "so inefficient, improper, sporadic and ineffective that the termination of plaintiff's services was required." It was further alleged that by continuing his career as a football player, plaintiff "violated his agreement with defendant and plaintiff's employment relationship with the corporations mentioned in his petition by whom he was employed." Defendant also alleged that the petition failed to state a claim "for the reason that the contract referred to therein is indefinite, uncertain and incomplete in its essential terms and lacks mutuality of obligation and remedy." Defendant also filed a counterclaim in which he sought damages in the amount of $350,000 for plaintiff's failure to perform his duties in an efficient, responsible and workmanlike manner. The appeal by defendant from the judgment denying any relief on the counterclaim has been abandoned.

The trial was before the court without a jury, and was held on numerous days covering a period of 84 days. There are more than 3,300 pages in the transcript. In making our review on this appeal we determine the cause *de novo*, weigh the competent evidence introduced upon the factual issues essential to the appeal, and reach our own conclusions based on the evidence, although we defer to the finding of the trial court where there is conflicting oral testimony involving a determination of the credibility of witnesses. Jackson v. Tibbling, 310 S.W.2d 909 (Mo.1958); Martin v. Norton, 497 S.W.2d 164 (Mo.1973).

The two points presented on this appeal are that (1) the court erred in decreeing

"specifying performance of an alleged oral contract whose proof was ambiguous, indefinite, uncertain, uncorroborated, and not beyond a reasonable doubt—with equivocation throughout," and the contract was "made by the court for the parties and was one different from that pleaded," and (2) "the court erred in finding that the Statute of Frauds was unavailable." In view of the nature of these points we see no occasion to extend this opinion by laboriously setting forth in detail all the evidence. In accordance with the rules previously stated concerning the nature and extent of our review, we have carefully reviewed all the competent evidence and have determined and reached our own conclusions as to the facts material to the issues presented. Therefore, we shall set forth only those facts.

We find and conclude that on or about April 1, 1962, defendant and the plaintiff entered into an arrangement, terminable at will by either party, whereby plaintiff was employed to assist in the development, financing, construction and operation of apartment buildings in cities where there was a college or university. Defendant agreed that in return for plaintiff's services he would pay plaintiff a certain amount in cash on a monthly basis, and that he also would transfer to plaintiff 10% of defendant's interest in the capital stock of each corporation. Pursuant to said agreement plaintiff began work for defendant and satisfactorily performed the work he was supposed to do.

We also find that after about four years of operating under the agreement, defendant terminated plaintiff's employment, and at that time plaintiff requested the transfer to him of the corporate stock pursuant to their agreement, but defendant refused to do so.

As previously noted, defendant's first point is that the proof of the oral contract was ambiguous, indefinite, uncertain and uncorroborated, and that the oral contract found by the trial court was different from that pleaded.

■ We shall consider first the latter contention. Defendant argues that the burden was on the plaintiff "to establish the contract pleaded," and he cites Hackbarth v. Gibstine, 182 S.W.2d 113 (Mo. App.1944); and Melville v. Waring, 159 Mo.App. 395, 141 S.W. 12 (1911). Neither of these cases so hold. Rule 55.54 (now designated as Rule 55.33) establishes a lenient policy concerning the amendment of pleadings, and also provides that when evidence is received without objection, the pleadings may be considered to have been amended to conform to the proof even though an amendment is not in fact made. See Miller v. Higgins, 452 S.W.2d 121 (Mo. 1970); and Condos v. Associated Transports, Inc., 453 S.W.2d 682 (Mo.App.1970). Therefore, we are not concerned with whether the contract found by the trial court was precisely the same as alleged in the pleadings, and there is no merit to this contention.

It is necessary that we refer to the argument portion of defendant's brief to determine in what way he contends that the proof of the terms of the contract was ambiguous, indefinite and uncertain.

After citing cases and setting forth general basic principles to the effect that the right to specific performance is discretionary with the court, and that it should not be exercised when the contract sought to be enforced is incomplete or its terms ambiguous, defendant argues that the "oral contract enforced here is one pieced together from ambiguity and uncertainty." Defendant points out that plaintiff testified that defendant told him at the time of the negotiations between them that "I [defendant] will give you a ten per cent equity in everything that I do." Plaintiff asserts that defendant stated that, "Since you are going to work along with me on this thing, and I am going to give you an equity interest, this will be subject to us getting together on this, but I'll start you out at $600 a month." He then adds that this was "the verbatim proposal made

by [defendant] and accepted by [plaintiff] in March 1962."

As previously stated, we conclude from all the evidence that plaintiff was to receive an "equity interest" in the various projects which were developed by their joint efforts. Also both parties agree that plaintiff was to receive $600 a month. The record shows that this amount was subsequently increased. The payment each month by defendant (directly or through a corporation) of a sum of money did not create an "equity interest" in the projects. Therefore, an equity interest meant something other than a money payment in cash. Plaintiff's contention is that by the use of this term it was agreed that he should receive 10% of the capital stock issued to or controlled by defendant in the corporation organized for each project. Defendant denies that there was an agreement concerning an equity interest, a fact that both the trial court and we have resolved against him. He contends that the burden was on plaintiff to prove the terms of the contract, and that "From this simple oral offer and oral acceptance, [plaintiff] has himself by his pleadings and his own testimony raised five possible sets of contractual obligations and considerations running from [defendant]," and therefore the terms of the contract were never proved with that degree of certainty required before a court will require specific performance.

Defendant argues that in the petition it was alleged that plaintiff was to receive "10% of the issued and outstanding capital stock of each of such corporations." Defendant then sets forth about twenty page references where plaintiff testified that the agreement was that he received "10% equity interest," or "10% stock interest." He argues that this testimony supports the allegations in the petition, but that the trial court found that the agreement was that plaintiff was to receive 10% of the shares issued to defendant, and that this testimony is inconsistent with other testimony of plaintiff. When read in context, we do not consider the testimony of plaintiff, relied on by defendant, to be inconsistent with the findings of the trial court, and for the reasons subsequently set forth we do not consider plaintiff's testimony to be inconsistent with itself.

Defendant argues that the second possible interpretation of plaintiff's testimony is the one found by the trial court. In his brief he admits that "it too finds support in [plaintiff's] testimony." But, he argues, this establishes "that one contract has been alleged and an entirely different one enforced." For the reasons previously noted, it is immaterial that the proof was not precisely in accord with an allegation in the petition.

The third interpretation of the "10% commitment," according to defendant, is that it represented "a 10% interest in [defendant's] profits." When read in context, this is not a reasonable interpretation of plaintiff's testimony. Plaintiff testified that he was entitled to an interest in Town & Campus of Florida, Inc., but that defendant sold the stock in that company, and that he anticipated receiving 10% of defendant's profits on the sale of that stock, "as part of my deal." Defendant also relies on the testimony of plaintiff that he received $5,000 from the sale of stock in Columbiana, Inc. in lieu of his 10% interest. This testimony of plaintiff does no more than express his view that if defendant sold his stock holdings in one of the corporations, plaintiff expected to receive his proportionate share of the proceeds. We find nothing in this testimony to conflict with the findings of the trial court. We further note that in the judgment of the trial court there is set forth the names of eleven corporations which acquired, erected or owned residential apartment buildings "and in the development of which said projects of such corporations, plaintiff played an active part while so employed by defendant." A twelfth corporation, not incorporated until August 5, 1966, is also named, and the court found that plaintiff "actively worked on the planning,

financing and the start of the erection of [its] properties." Neither Town & Campus of Florida, Inc. nor Columbiana, Inc. are there listed.

As to the fourth alleged interpretation permissible from plaintiff's testimony, defendant argues that the "10% interest sometimes represents an interest in the fee simple of the project." Defendant has reference to Nirvana Development Corporation which had business operations other than projects on which plaintiff worked. Plaintiff was asked on cross-examination if he claimed to be entitled "to ten per cent of the stock interest" in that corporation. He replied: "I never claimed that I wanted ten per cent of Nirvana. I wanted ten per cent of every multiple dwelling unit that we started together." Defendant argues that by this answer plaintiff contends he is entitled to 10% of the fee of the projects he worked on which are owned by Nirvana Development Company. This is not a reasonable interpretation. When considered in context with his other testimony he obviously was referring to 10% of defendant's interest in those "phases" of Nirvana Development Corporations pertaining to projects on which plaintiff worked. The court made it clear in a comment that this was its construction of that testimony.

Defendant's fifth alleged interpretation is based on the testimony of plaintiff that he was to receive 10% equity interest in every corporation defendant started after plaintiff became associated with defendant. He asserts that this is inconsistent with the pleadings where he asks for an interest in at least three corporations which were incorporated prior to that time. When the whole of plaintiff's testimony is considered, his claim was based on the work he did in developing projects, and his interest is to be measured by 10% of defendant's stock attributable to that project. The date of incorporation of the managing company is immaterial.

■ We do not agree that plaintiff testified to five inconsistent or different sets of terms for the contract. We are of the opinion that the trial court's findings as to the terms of the agreement concerning the "10% interest" of plaintiff is supported by the evidence, and that it is in agreement with our findings of facts made from our independent review of the evidence.

In his argument, but not expressly set forth in his point, defendant also contends that in the "oral proposal there are somehow to be found other essential terms of the contract," as he sets forth what he contends are twelve "additional terms." He claims that at least three are not supported by the evidence. Why some of the others are set forth is not readily apparent. Defendant cites page references in his brief where a finding of that alleged term of the contract is supported by the evidence.

■ We do not consider it either advisable or appropriate to extend this opinion by a detailed discussion of each of these twelve separate items. Some of the so-called "additional terms" are immaterial to the issues. For example: In items (1) and (2) he asserts that the trial court found that each project was to be separately incorporated, and that defendant was to hold at least 60% of the stock of each corporation. Whether there are or were to be separate corporations is immaterial to plaintiff's claim; his claim is that pursuant to the agreement he was entitled to 10% of the corporate stock issued to or controlled by defendant.

■ Defendant asserts in item (9) that it is not shown whether the $600 per month was to be salary or expenses, or whether he was to be reimbursed for his expenses. Plaintiff is making no claim for salary or expenses, and defendant has not asserted any claim for reimbursement.

■ In item (8) defendant refers to testimony of plaintiff concerning the duties

he was to perform where he stated that "He [defendant] told me that for me to come with him and to spend as much time with him as I possibly could, and to observe and to do what he tells me to do." He asserts that this was contrary to the finding of the trial court that plaintiff was to assist defendant "in the development, financing, construction and operation of multiple family residences * * * and in the finding of purchasable land economically feasible for such developments." We do not consider that any inconsistency exists between plaintiff's testimony and the finding of the trial court.

Plaintiff's second point is that the trial court erred in finding that the Statute of Frauds was not available because "(1) the agreement was not capable of performance within one year from its making * * *; (2) the agreement was for the delivery of stock within the meaning of § 432.020." RSMo 1969, V.A.M.S.

■ Defendant first argues that the agreement between him and plaintiff was a "contract of employment, pursuant to which plaintiff was to assist defendant from the beginning point of finding purchasable and economically feasible land through the financing, development, construction and operations of multiple family residence apartments in college towns." Defendant then asserts that "the contract is not susceptible of specific performance" because it required the "detailed, comprehensive, personal services" of plaintiff. He cites Richardson v. Ozark Airlines, Inc., 270 S.W.2d 8 (Mo.1954) and Falder v. Dreckshage, 227 S.W. 929 (Mo.App.1921). Each of these cases supports the principle that a court of equity will not exercise jurisdiction to grant a decree of specific performance of a contract for personal services. However, in this case there is no request for specific performance of personal services. Plaintiff's claim is that he has fully and satisfactorily performed the personal services required of him, and he seeks the compensation due him pursuant to the agreement.

■ Defendant next argues that the services of plaintiff were to be continuous and could not be performed within one year. It is true that plaintiff expected the arrangement to continue, or hoped so, but it is also true that the contract was for no definite term, it was terminable at the will of either party, and could have been performed within a year. In Kansas City Stockyards Co. v. A. Reich & Sons, Inc., 250 S.W.2d 692 (Mo.1952), quoting from 37 C.J.S. Frauds, Statute of § 55, this court said: "'A contract which is not expressly to run for a period longer than a year and is terminable at will, or on less than a year's notice, is not within the statute [of frauds], since by exercise of the option to terminate it may be wholly performed within the year, and this rule applies although the contract is of a continuing nature, and, in fact, has extended for more than a year.'" The facts of this case are governed by this rule.

■ Defendant also argues that the agreement was for the transfer of stock and therefore the right to specific performance is barred by what was § 432.020 RSMo 1969, V.A.M.S., prior to its repeal in 1965, or by § 400.8–319 RSMo 1969, V.A.M.S., a statute of frauds in regard to contracts for the sale of securities contained in Uniform Commercial Code. As to the issue of which statute would be applicable, see Brooks v. Cooksey, 427 S.W. 2d 498 (Mo.1968). However, in any event, there has been complete and satisfactory performance by plaintiff, so we are not concerned with the effect of partial performance. See Alonzo v. Laubert, 418 S. W.2d 94 (Mo.1967); and 81 C.J.S. Specific Performance § 54. In the Alonzo case, supra, this court stated: "'But if services are to be rendered instead of paying money and the services are fully performed, then the statute [of frauds] cannot be used to produce fraud.'" A more complete statement of the rule may be found in Trimmer v. Short, 492 S.W.2d 179 (Mo.App.1973), as follows: "At 37 C.J.S. Frauds, Statute of § 251, p. 762, it is said that 'the great

weight of authority supports the rule that the statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, and the party so performing may sue on the contract in a court of law; * * *.', and see also 37 C.J.S. Frauds, Statute of § 254, p. 774, 'However, such contracts may be taken out of the statute by complete performance by one party thereto, regardless of how many years may have to elapse before the agreement is performed by the other party;' * * *. It must be concluded that since the decision in [Joseph Schlitz Brewing Co. v. Missouri Poultry & Game Co., 229 S.W. 813 (Mo.1921)], Missouri has joined the weight of authority noted in C.J.S. above, 'Plaintiff had fully performed, and the statute is no defense.' " The trial court correctly held that defendant was not entitled to the defense of the Statute of Frauds.

The judgment is affirmed, and the cause is remanded for such further proceedings that the trial court retained jurisdiction.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.

ON MOTION FOR REHEARING

PER CURIAM.

The judgment of the trial court was that "plaintiff is entitled to specific performance of the agreement entitling plaintiff to 10% of the capital stock issued or assigned to defendant in each of the corporations mentioned in Item 6 of the findings of fact," and one of those corporations is "Nirvana Development Company, a Missouri Corporation" (hereafter referred to as "Nirvana"). It was developed by the testimony that Nirvana was engaged in activities in addition to projects that plaintiff worked on or helped develop. Plaintiff testified that he did not claim he was entitled to 10% of all the stock held by defendant in Nirvana. In the principal opinion we held that plaintiff was entitled to 10% interest in the stock of Nirvana that was proportionate to those "phases" of Nirvana pertaining to projects on which plaintiff worked, but we affirmed the judgment of the trial court. Defendant asks that the opinion be modified and the trial court be directed on remand, to limit plaintiff's recovery as to Nirvana to that interest stated in the principal opinion. The trial court retained jurisdiction for the purpose of "causing an accounting to be made as to the number of shares of capital stock in each of the corporations * * * to which plaintiff is entitled * * *." We think it reasonable that on remand plaintiff's interest would be determined according to the finding expressed in the principal opinion, but to prevent any doubt, the opinion is hereby amended to provide that the remand is with directions that the trial court determine plaintiff's interest in Nirvana to be 10% of defendant's interest proportionate to those activities of Nirvana on which plaintiff worked or helped develop.

Defendant also asserts that we attributed certain testimony to him where it came from plaintiff. The opinion is modified to restate correctly the source of the testimony.

As modified the opinion is approved, and defendant's motion for a rehearing or to transfer to the court en banc is overruled.