**Paul B. MAASEN, Appellant,**

v.

**Richard J. LUCIER, Appellee,**

**Paul B. MAASEN, Appellant,**

v.

**LUCIER CHEMICAL INC., LTD., DBA LCI, LTD., Appellee.**

No. 91–1332.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1991.

Decided April 7, 1992.

Douglas P. Dowd, St. Louis, Mo., argued (Edward L. Dowd, on brief), for appellant.

David W. Harlan, St. Louis, Mo., argued (John T. Walsh and Thomas A. Connelly, on brief), for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

PER CURIAM.

In this diversity suit, Paul Maasen seeks to enforce an alleged oral employment agreement with his former employer, Richard Lucier, to reward Maasen's labors with a fifty percent ownership interest in Lucier Chemical Industries, Inc. ("LCI"), in addition to the salary and other benefits that Maasen in fact received. After a non-jury trial, the district court[1] found no such agreement and entered judgment for the defendants. We affirm.

1. The HONORABLE WILLIAM L. HUNGATE, Senior United States District Judge for the Eastern District of Missouri.

In 1978, Maasen was hired as a chemicals salesman by Chemtech, Inc. At Chemtech, Maasen was trained by and worked under Lucier, whom Maasen described as "one of the most outstanding chemical salesmen in the country." In early 1983, Lucier and Maasen discussed going into business together. In May, Lucier left Chemtech, formed his own company (LCI), and entered the business of selling water treatment chemicals to municipalities.

On June 18 and again on June 19, 1983, Maasen and Lucier met to discuss Maasen's coming to work for LCI. Maasen's claim of an oral agreement is based upon the discussion at these meetings. The parties agree that Maasen agreed to quit his job at Chemtech and begin work as LCI's Vice President of Sales and Marketing, at a salary of $48,000 per year plus a package of benefits. Maasen contends, and Lucier denies, that they also agreed to much more—as Maasen described it at trial:

> That was the deal we made. You come to work, Paul, I'm going to put up the financing, we're 50–50 partners, let's get going. We'll work out the details later. We'll let the lawyers handle it. Okay, Dick. We shook hands.

Lucier testified that nothing more was agreed to at the June 18 and 19 meetings than that Maasen would begin work and the attorneys would attempt to negotiate satisfactory stockholder and employment agreements.

Although Lucier was clearly willing in June 1983 to let Maasen acquire substantial ownership in LCI, there were two significant obstacles blocking Maasen's acquisition of a fifty percent equity interest. First, he had no money to purchase stock and was unwilling to accept stock in lieu of salary. Lucier was unwilling to let Maasen buy stock with the hoped-for future growth in LCI's net worth. Second, to provide initial working capital, Lucier loaned LCI $60,000, and he and his wife pledged some $250,000 of their personal assets to guarantee its line of credit. Lucier was unwilling to give Maasen equal ownership and control unless Maasen shouldered a proportionate financial risk, which he was unable to do.

The attorneys exchanged lengthy draft stockholder and employment agreements over a long period of time, but they never surmounted these basic financial obstacles. As a result, although Maasen and Lucier were both directors, had roughly the same salary and benefits, and drove the same model company cars, Maasen never received any shares of stock in LCI or any other documentary evidence of an ownership interest in the company.

By the fall of 1987, LCI had grown rapidly and was a clear success. In October 1987, after hiring a management consultant to analyze LCI, Lucier demoted Maasen. Three months later, Lucier moved the company from St. Louis to Florida. Maasen refused to move, and Lucier rejected Maasen's proposal to run LCI's sales force from St. Louis. On April 6, 1988, Maasen left LCI. Later that month, he contacted Lucier and demanded $3 million for his alleged fifty percent ownership interest. When Lucier denied that Maasen had an ownership interest, and offered a much more modest severance package, Maasen commenced this lawsuit.

Maasen went to trial on two inconsistent theories of recovery—that Lucier breached an agreement to make Maasen an equal partner in LCI, even though the company was incorporated; and that Lucier breached an agreement to convey half of LCI's stock to Maasen. After a three-day bench trial, the district court rejected both theories. In detailed findings and conclusions, it rejected Maasen's partnership theory as inconsistent with the parties' lengthy stock purchase negotiations, with Maasen's treatment of all his income from the firm as salary rather than partnership income, and with the entire course of LCI's corporate existence. It rejected his stock purchase theory based upon its finding that there was no enforceable stock purchase agreement because the parties never agreed "on a sales price for LCI stock, on a time for the stock purchase, or on the amount of stock plaintiff would receive."

On appeal, Maasen has abandoned his stock purchase theory; he argues that the district court erred in concluding there was no partnership agreement. Maasen acknowledges that he is attacking the district court's core findings of fact. He contends that the court's key findings are clearly erroneous because it misconstrued critical documents, ignored other important evidence, and misapplied controlling Missouri law.

By focusing his attack on the district court's findings, Maasen has shouldered a heavy burden on appeal. Under Fed, R.Civ.P. 52(a), we may set aside findings as clearly erroneous only if, after reviewing the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Moreover, in this case the district court's essential finding of no agreement was based upon its assessment of the credibility of the key witnesses. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings." *Id.* at 575, 105 S.Ct. at 1512.

■ After carefully reviewing the entire record, we agree with the district court's conclusion that the parties never reached an enforceable agreement to provide Maasen a one-half ownership interest in LCI, either through partnership or stock purchase. The evidence clearly shows that, while the parties and their attorneys discussed and even searched for a way to provide Maasen an equity interest in the company, they never agreed to terms that would reconcile Maasen's lack of financial resources and Lucier's personal financial stake in the enterprise.

■ We also reject Maasen's assertion that the district court misconstrued applicable law. Missouri law places a very high burden on one who seeks to prove an oral partnership agreement of the kind alleged by Maasen, particularly when, as here, the alleged partnership is inconsistent with the corporate form in which the parties conducted their business. *See Nesler v. Reed,* 703 S.W.2d 520 (Mo.Ct.App.1985); *Gonseth v. K & K Oil Co.,* 439 S.W.2d 18, 26 (Mo.Ct. App.1969). Maasen cites *Koman v. Morrissey,* 517 S.W.2d 929 (Mo.1974), as a "sweat equity" case "directly on point ... but ignored by the District Court." But *Koman* is clearly distinguishable because there the court found an express oral agreement to pay the plaintiff a ten percent stock interest in addition to his salary.

■ We have also considered, and reject as totally without merit, Maasen's contention that the district court committed reversible errors during the trial by improperly suggesting answers to a defense witness and by restricting Maasen's right to impeach that witness with prior deposition testimony. The record reflects that the court's evidentiary rulings were entirely correct and its comments were appropriate in this non-jury trial. There was clearly no abuse of the trial judge's "large degree of discretion" to control the examination of witnesses and to comment on the evidence. *See Skogen v. Dow Chem. Co.,* 375 F.2d 692, 704 (8th Cir.1967); Fed.R.Evid. 611.

Accordingly, we affirm the judgment of the district court on the basis of its thorough findings of fact and conclusions of law. *See* 8th Cir.R. 47B.