Thomas F. BOHANNON

v.

READING COMPANY, James R. Kelly
and Order of Railway Conductors and
Brakemen, an association.

Civ. A. No. 25281.

United States District Court
E. D. Pennsylvania.

Dec. 18, 1958.

Elias Magil, Philadelphia, Pa., for plaintiff.

Miles W. Kirkpatrick, Philadelphia, Pa., for defendant Reading Co. Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for defendant James R. Kelly.

Allen S. Olmsted, II, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendant Order of Railway Conductors and Brakemen.

CLARY, District Judge.

Plaintiff, Thomas F. Bohannon, was formerly employed by defendant Reading Company (hereinafter referred to as "Reading"), and maintained membership in the defendant Order of Railway Conductors and Brakemen (hereinafter referred to as the "union"). The individual defendant James R. Kelly held the office of General Chairman in the defendant union. The complaint alleges that following a hearing on charges that he had falsified his application for employment in that he had failed to reveal that he had a police record or had been committed to a reformatory or prison, the plaintiff was notified by Reading of his discharge. He then contacted Kelly, as representative of the union, for the purpose of contesting the discharge through the grievance procedure; but despite repeated requests no action was taken. Plaintiff contends that the action of Reading in discharging him was wrongful in that it violated the collective bargaining agreement and, accordingly, he seeks damages. He further seeks damages from both the union and Kelly

for failing to protect plaintiff's rights "with due diligence and loyalty". Jurisdiction was alleged to rest upon both the so-called "Federal Question" statute, 28 U.S.C. § 1331 (1952), and the grant of jurisdiction over cases arising under an Act of Congress regulating commerce, 28 U.S.C. § 1337 (1952). All defendants have moved to dismiss for lack of jurisdiction.

Plaintiff's argument is a somewhat subtle one. It is based upon the proposition that the Railway Labor Act, 45 U. S.C.A. §§ 151–163, gives rise to the action pleaded. He does not contend, nor could he do so successfully, that the Act accomplishes this expressly; but rather that it does so impliedly, leaving it to the judiciary to fashion the controlling rule.

■■■ As applied to the suit against Reading, the argument must fail. It seems well established that the Act does not provide an employee a right of action for wrongful discharge. Stack v. New York Central R. Co., 2 Cir., 1958, 258 F.2d 739; Smithey v. St. Louis Southwestern Ry. Co., 8 Cir., 1956, 237 F.2d 637, 638; Broady v. Illinois Cent. R. Co., 7 Cir., 191 F.2d 73, 78–79, certiorari denied, 1951, 342 U.S. 897, 72 S.Ct. 231, 96 L.Ed. 672; cf. Transcontinental & Western Air, Inc., v. Koppal, 1953, 345 U.S. 653, 660–661, 73 S.Ct. 906, 97 L.Ed. 1325. In such circumstances recourse must be had to state law for possible relief; and in a proper case of diversity of citizenship, which is concededly lacking here, the Federal courts may take jurisdiction over such litigation. See Transcontinental & Western Air, Inc., v. Koppal, supra, 345 U.S. at pages 660–661, 73 S.Ct. at page 910. Moore v. Illinois Cent. R. Co., 1941, 312 U.S. 630, 634–636, 61 S.Ct. 754, 85 L.Ed. 1089.

The suit against the union is not disposed of so easily. It should be stated that the Court reads this portion of the complaint as one alleging negligence. Thus the broad question posed for decision is whether the Act gives a single union member a Federal right of action against his union for negligent failure to prosecute a grievance.

That the Railway Labor Act impliedly invests an employee with some rights vis-a-vis his bargaining representative is evident from the line of cases beginning with Steele v. Louisville & N. R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. In Steele the union had negotiated agreements with the employer which discriminated against Negro employees. In a suit by the Negro employees for injunctive relief and damages, the Court held that the Act had, by implication, imposed upon the union the enforceable duty of representing all within the bargaining unit without hostile discrimination against any of them. 323 U.S. at pages 202–203, 65 S.Ct. at page 232. The Court's reasoning proceeded from the position of *exclusive* bargaining agent which the Act had conferred upon the union. The Court concluded that the grant of the power to act involved a commensurate duty to exercise the power in the interest and behalf of those within the unit. 323 U.S. at page 202, 65 S.Ct. at page 231. Failure to so hold, the Court noted, would present serious Constitutional questions; for the power conferred by the Act to bargain for all employees likened the representative to "a legislature which is subject to constitutional limitations on its power to deny, restrict, destroy or discriminate against the rights of those for whom it legislates * * *." 323 U.S. at page 198, 65 S.Ct. at page 230. The right asserted by the Negro employees was thus a Federal one, the extent and nature of which had been left to judicial determination. 323 U.S. at page 204, 65 S.Ct. at page 232.

The precise limits of the Steele doctrine remain uncharted. See generally, Wellington, Union Democracy & Fair Representation, 67 Yale L.J. 1327 (1958). However, it extends to the processing of grievances, Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, and is not restricted to discrimination based upon race alone, see Ford Motor Co. v. Huffman, 1953, 345 U.S.

330, 337–339, 73 S.Ct. 681, 97 L.Ed. 1048; Mount v. Grand Int'l Bhd. of Locomotive Engineers, 6 Cir., 1955, 226 F.2d 604, 607, certiorari denied, 1956, 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839; Hargrove v. Brotherhood of Locomotive Engineers, D.C.D.C., 1953, 116 F.Supp. 3, 9. Plaintiff now asks that it be extended to include negligence in addition to hostile discrimination. No cases have been cited and research has uncovered none in which a similar contention has been advanced. It may be noted parenthetically that the principles of law enunciated by the United States Supreme Court in this field grew out of class actions as opposed to actions by individuals.

■ It must be emphasized that there is nothing in the statute or its history, beyond what has been referred to in connection with the Steele case, which serves to throw light upon the Congressional intent with respect to the problem. If an expression of such intent were available, it would, of course, be the duty of the courts to implement it. But the most that may be concluded in the present instance is that there is an absence of intent. Therefore, what is sought by plaintiff is the declaration of a judicially as opposed to a congressionally formulated rule. Inextricably involved in this determination are the delicate and often complex considerations that attend the concepts of separation of powers and federalism. The Court is of the opinion that those considerations dictate rejection of plaintiff's position and dismissal of the action.

Our federalism is predicated upon the assumption that the states shall furnish the general body of applicable law:

"National action has thus always been regarded as exceptional in our polity, an intrusion to be justified by some necessity, the special rather than the ordinary case. This point of view cuts even deeper than the concept of the central government as one of granted, limited authority articulated in the Tenth Amendment. National power may be quite unquestioned in a given situation; those who would advocate its exercise must none the less answer the preliminary question why the matter should not be left to the states. Even when Congress acts, its tendency has been to frame enactments on an *ad hoc* basis to accomplish limited objectives, supplanting state-created norms only so far as may be necessary for the purpose. Indeed, with all the centralizing growth throughout the years, Federal law is still a largely interstitial product, rarely occupying any field completely, building normally upon legal relationships established by the states." Wechsler, The Political Safeguards of Federalism, 54 Colum.L.Rev. 543, 544–45 (1954).

This necessity for justification of national action is particularly compelling where it is advocated that action be initiated by the judiciary rather than Congress. While the federalistic structure assures the states a powerful voice in the deliberations of the national legislature, this is not equally true with respect to the judiciary. Hence, it may be thought that national action will be viewed more sympathetically and acquiesced in more readily by the states, thereby doing less violence to federal-state relations, if engendered by the Congress. See Mishkin, The Variousness of "Federal Law", 105 U.Pa.L.Rev. 797, 799–800 & n. 12, 814 n. 64 (1957); Wechsler, op. cit. supra. Indeed, the structure of the national government itself should evoke the same hesitancy in the courts; for Congress, not the judicial branch, is the policy-making body, and the courts are extremely reluctant to fashion law in the absence of an expression of Congressional intent.

These considerations seem peculiarly apposite in the instant cases; for plaintiff adduces no cogent reason, and none is discernible, for the displacement of state law. It has not been demonstrated that the issue at hand bears any really significant or substantial relation to the governmental program embodied in the Rail-

way Labor Act. Nor does it appear that the duty of fair representation enunciated in Steele would be appreciably affected by either promulgating or rejecting a federal right to sue a bargaining representative for negligent failure to prosecute a grievance. Negligence is by hypothesis unintentional; and any preventive or prophylactic purpose to be served by recognizing a right under the Act must perforce be minimal. Because of this, state law would appear adequate to accomplish the same objective. The contrary may well be true in situations such as Steele where the wrong complained of is the intentional one of hostile discrimination. The basic rationale of negligence actions is the justice of placing a resulting loss upon he who is responsible for it. Laudable though this may be, it bears no sufficiently close relation to the national program to warrant the relief requested. Such a relation should be shown to exist before judicial intrusion upon what is essentially the state domain would be justified. Compare Mishkin, op. cit. supra, particularly at 799–801. Where the possible advantage to the national program to be derived from the declaration of a federal rule is as unclear as in the instant case, the considerations mentioned previously indicate judicial restraint to be the proper course.

The policy of avoidance of constitutional questions—present in the Steele decision—does not suggest a different result. It is, to say the least, somewhat difficult to perceive how a negligent failure such as this could rise to constitutional dimensions.

Finally, it may not be amiss to point out that a contrary holding would bring all such negligence actions within the jurisdiction of the Federal courts. In Tunstall v. Brotherhood of Locomotive Firemen, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, the Court held that since the right of action recognized in Steele was one impliedly created by the Railway Labor Act, suits to enforce such rights came within the jurisdictional grant over cases arising under laws regulating commerce, 28 U.S.C. § 1337 (1952). Since the statute necessitates no jurisdictional amount, all such cases would be federally cognizable. Although the number of negligence cases that might arise is problematic, the work of the Federal courts would in any event be substantially increased. While this is not, perhaps, strictly relevant to the initial question of whether a Federal rule should be formulated, it is not without import where other considerations do not suggest the advisability of adopting such a rule.

It is clear from what has been said that the suit against Kelly in his capacity as a union officer can fare no better than that against the union; and dismissal as to all parties must follow. This will be without prejudice to the right of the plaintiff to prosecute the action presently pending in the Courts of Common Pleas of Philadelphia for redress of the same grievances.