331 F.2d 530
 Luther Ray RUMBAUGH, Appellant,
v.
WINIFREDE RAILROAD COMPANY, a corporation, The Carbon Fuel Company, a corporation, Local Union 14182 United Mine Workers of America, District 50 United Mine Workers of America, and United Mine Workers of America, Appellees.
 No. 9022.
 United States Court of Appeals Fourth Circuit.
 Argued September 27, 1963.
 Decided March 2, 1964.
 Rehearing Denied May 1, 1964.
 
 COPYRIGHT MATERIAL OMITTED Edwin M. Young, Roanoke, Va. (E. Franklin Pauley, Charleston, W. Va., on brief), for appellant.
 F. Paul Chambers, Charleston, W. Va. (James K. Brown and Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for appellees Winifrede R. Co. and Carbon Fuel Co.
 M. E. Boiarsky, Charleston, W. Va., for appellees Unions.
 Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and NORTHROP, District Judge.
 SOBELOFF, Chief Judge.
 
 
 1
 This is another in the succession of cases since Steele v. Louisville & Nashville R. R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), involving interpretation of the Railway Labor Act, 45 U.S.C. A. § 151 et seq., and determination of the scope of federal judicial power in its administration.
 
 
 2
 Rumbaugh has joined his former employer, Winifrede Railroad Company, and the union designated as the bargaining representative for local railroad employees as co-defendants in an action to recover damages allegedly caused by the independent and combined efforts of the defendants to effect his discharge. Since there is no diversity of citizenship between the parties, federal jurisdiction must be predicated upon a claim arising under the laws of the United States. 28 U.S.C.A. §§ 1331, 1337. No such federal question was recognized by the District Court for the Southern District of West Virginia and the complaint was dismissed for lack of jurisdiction over the subject matter, the District Court holding that exclusive jurisdiction was in the Railroad Adjustment Board.
 
 
 3
 This disposition of plaintiff's claims raises two fundamental jurisdictional questions. First, is there federal court jurisdiction over an employee's suit against a union for invidious discrimination where there is a dispute as to whether the aggrieved worker is a member of the bargaining unit which the union is statutorily obligated to represent? Second, does an employee have such a federal claim against his employer for wrongful discharge that jurisdiction will lie in a federal court regardless of the citizenship of the parties?[1]
 
 THE COMPLAINT
 
 4
 Essentially, Rumbaugh's grievance against the union is that it, as the local bargaining representative, discriminated against him by refusing him membership, by failing to protect his employment rights, and by wrongfully procuring his discharge through false charges filed with his employer. His complaint against the railroad arises from allegedly false representations made to him by company officials that he was not covered by the collective bargaining agreement and his subsequent summary discharge, which he asserts was unlawful. He further charges that there was collusion between the union and his employer to effect his dismissal.
 
 
 5
 As factual support for the claims of unfair representation, wrongful discharge and conspiracy, the complaint states that the plaintiff went to work for the railroad in 1928 as a laborer and by 1959 had risen to the position of senior mechanic. Although designated as a foreman, Rumbaugh maintains that his duty was merely to verify locomotive inspection reports, and this entailed no supervisory functions whatsoever. Even though not a member of Local 14182 United Mine Workers, the plaintiff asserts that he has been unlawfully discriminated against by the bargaining agent in rejecting all of his applications for membership, while accepting similar requests from his fellow workers. He insists that the collective bargaining agreement adopted on November 7, 1958, imposed a duty on the union to represent him fairly as one of the specified "non-supervisory men."
 
 
 6
 From the complaint it appears that Rumbaugh's troubles began on July 16, 1959, when a local union official, not qualified as a mechanic and without seniority, was designated to assume the responsibilities of an absent colleague. Thinking the assignment unfair, the plaintiff was moved to inquire of company agents about an individual's right under the Railway Labor Act to organize other employees, presumably into a competing bargaining unit. Dissatisfied because he was "briskly informed" by the agents that no such right existed and displeased as well with changes being effected in rates of pay and work rules, Rumbaugh approached the president of Winifrede Railroad and was assured that a full investigation of the matter would be made and, if necessary, a complete hearing arranged. Neither step was ever taken. This prompted the plaintiff to inquire further of a union agent on October 14, 1959, as to the union's compliance with the statutory requirement that union-management contracts and pertinent work rules be filed with the National Mediation Board. Thereafter, on the same day, it is alleged that a union agent, conspiring with other union agents and an officer of the railroad, filed with the employer "charges against complainant on the false ground that he [Rumbaugh] was discriminating against the union" and requested that he be fired. The next day, October 15, 1959, Rumbaugh was summarily dismissed without explanation.
 
 
 7
 This suit for compensatory and punitive damages totalling $300,000 was instituted to redress the claimed discriminatory, wrongful and collusive behavior of the defendants.
 
 CLAIM AGAINST THE UNION
 
 Duty of Fair Representation
 
 
 8
 Since the landmark case of Steele v. Louisville & Nashville R. R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), the principle has become unchallengeable that the federal courts have subjectmatter jurisdiction to enforce the judicially-created duty imposed upon bargaining agents to represent all employees in the bargaining unit fairly and without racial discrimination.[2] Originally this court in Alabaugh v. Baltimore & O. R. R., 222 F.2d 861 (4th Cir.), cert. denied, 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748 (1955), adopted the view that federal jurisdiction over alleged violations of the "duty of fair representation" was restricted to cases of racial discrimination. The District Court, following this guide, declined to give weight to what it recognized to be "the current of judicial authority" toward expansion of the union's obligation to include all forms of hostile treatment and discrimination regardless of race.[3]
 
 
 9
 While the District Court's conclusion, when rendered, was consistent with the position theretofore taken by this court, it does not reflect the broader principle which we subsequently announced in Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191 (4th Cir. 1963). There we specifically stated that Alabaugh "represents too narrow a view" and that the judicially enforceable duty of fair representation "should be interpreted as also prohibiting invidious discrimination that is not based upon race." Id. 316 F.2d at 198. Thus we held that an allegation of breach of the statutory duty, even if not based upon racial discrimination, is within the jurisdiction of the federal courts.
 
 
 Membership in the Bargaining Unit
 
 
 10
 We also recognized in Thompson that no less protection should be afforded to an aggrieved non-union member who is within the bargaining unit for which the union is the bargaining agent than is afforded to a member of the union.[4] Because the duty extends only to those employees whom the union is empowered to represent and because a union cannot be expected to look after the needs and demands of workers who are not covered by the collective bargaining agreement, an employee must establish, as part of his case, that he is a member of the designated bargaining unit.
 
 
 11
 Rumbaugh maintains that the union's duty of fair representation extends even further. His theory is that when discrimination is alleged, the complainant's status relative to the bargaining unit is immaterial. As support for this contention he cites Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952). But in that case the Supreme Court rejected the proposition that Steele's prohibition against racial discrimination was inapplicable because the plaintiffs, train porters, were not designated as brakemen, the class of employees represented by the Brotherhood. The Court said that the central issue was the legality of the collective bargaining agreement which the white union had secured and which had the effect of requiring the carrier to eliminate all Negro train porters and substitute white brakemen in their places.
 
 
 12
 We agree that the Court disregarded the artificial classification of train porters and brakemen in holding that the union violated its obligation of fair representation by entering into a racially discriminatory collective agreement. But this disregard was a facet of the patently illegal activity of the Brotherhood. It was the Court's view that the bargaining agent's obligation extended to all who worked in the craft, regardless of job classification. The Court did not hold that the duty of fair representation extends even to workers, such as supervisors, who are not regarded as "employees" within the meaning of the Railway Labor Act.
 
 
 13
 The union's position is that Rumbaugh is not within the unit it represents, because he is a supervisor. It contends that exclusive jurisdiction to determine his employment classification (i. e., whether he is a supervisor or a non-supervisor) lies either with the National Railroad Adjustment Board as a question arising "out of the interpretation or application of agreements," 45 U.S.C.A. § 153 First (i), or with the National Mediation Board as a dispute concerning craft classification or representation, 45 U.S.C.A. § 152 Ninth.
 
 
 14
 Rumbaugh's rejoinder is that the complaint, the well-pleaded facts of which are to be taken as true for purposes of the motion to dismiss, establishes his non-supervisory status when it avers that:
 
 
 15
 "He was an hourly paid employee with no authority to hire, fire or discipline; he kept records on other employees of a clerical nature but with no supervisory function over them. He was given a title as foreman by the company for the purpose of signing locomotive inspection reports." Rumbaugh makes the point that the District Court should at least have heard evidence on the issue of his employment status before concluding that the allegations of the complaint are insufficient to establish federal jurisdiction.
 
 
 16
 The general principle that pleadings are to be liberally construed was applied in Priest v. Chicago, R. I. & P. R. R., 189 F.2d 813 (8th Cir. 1951), a case strikingly similar to the one at hand. There a discharged railroad metal worker brought suit against his former employer, alleging inter alia, that the carrier and the union had discriminated against him by disregarding his superior seniority rights and effecting his discharge because of his membership in another union. The plaintiff prayed for monetary damages, reinstatement and an injunction. The defendant answered that exclusive jurisdiction lay in the National Railroad Adjustment Board because the dispute was between an employee and a carrier growing out of the interpretation or application of a collective agreement. The District Court adopted the union's view without holding a hearing and granted its motion to dismiss for lack of jurisdiction. The Court of Appeals reversed.
 
 
 17
 "It seems probable that when this case is tried the evidence will show that the plaintiff was never discharged, but was, as the defendant asserts, merely laid off or furloughed, due to a reduction of force, and that the controversy involves only the interpretation and application of the collective-bargaining agreement referred to in the complaint." Id. 189 F.2d at 815.
 
 
 18
 In spite of this the court found itself unable to say "to a legal certainty" that there was no jurisdiction and therefore held that "the District Court should not have attempted to decide the question of its jurisdiction from allegations of the complaint and of the motion to dismiss, but should have taken evidence to show the exact factual basis for the plaintiff's claim before ruling upon the question of jurisdiction."[5]
 
 
 19
 Postponement of the final resolution of the jurisdictional problem until the District Court has had an opportunity to sound the complaint for its underlying factual and legal bases, as was done in Priest and other cases,[6] was required in the present action unless it were clear from the pleadings that, in so doing, the federal court would usurp the statutory power of the administrative agencies created by the Railway Labor Act. In this regard the union calls attention to the specific wording of the Act and to court decisions which, it says, indicate that exclusive competency is with either the National Railroad Adjustment Board or the National Mediation Board rather than with the federal courts to determine whether a discharged railroad employee was, prior to his release, a member of the bargaining unit which the union was duty-bound to represent. We disagree with the union's interpretation for the reasons now to be stated.
 
 
 Employee-Union Disputes Not for the Railroad Adjustment Board
 
 
 20
 Section 153 First (i) of 45 U.S. C.A. provides:
 
 
 21
 "The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * * may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board * * *."
 
 
 22
 The plain meaning of this section is that the Board is charged with the responsibility of adjudicating controversies between employees and their employer, the carrier, and not those involving employees and their bargaining representative. This interpretation has been reiterated many times since the Supreme Court's landmark decision in Steele v. Louisville & Nashville R. R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), where this section was interpreted as follows:
 
 
 23
 "Section 3, First (i) [45 U.S.C.A. § 153 First (i)], which provides for reference to the Adjustment Board of `disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements,' makes no reference to disputes between employees and their representative." Id. 323 U.S. at 205, 65 S.Ct. at 233, 89 L.Ed. 173.
 
 
 24
 Later cases have followed this reading of the statute.[7] These pronouncements of the Supreme Court make it clear that the Adjustment Board does not have exclusive, or even concurrent, jurisdiction over suits by an employee against the bargaining agent to redress discriminatory treatment.
 
 
 25
 Nor do we find that the joinder of the railroad as a defendant in this claim changes the situation. In the first place, federal jurisdiction was not deemed destroyed by joinder of railroads in actions for discrimination in cases such as Steele, Howard and Graham. And in Cunningham v. Erie R. R., 266 F.2d 411 at page 416 (2d Cir. 1959), a suit for discrimination brought by a former employee against the union and the employer, the court said:
 
 
 26
 "If the District Court has jurisdiction to proceed against the union it is clear, we think, that it has also power to adjudicate the claim against the railroad. It would be absurd to require this closely integrated dispute to be cut up into segments."
 
 
 27
 There the employee's grievance, asserted against both the union and the railroad, was that he was "discriminatorily discharged." The court held that the presence of the railroad as a party defendant did not defeat federal court jurisdiction because exclusive Adjustment Board jurisdiction extends only to employee-employer disputes and since the railroad was "brought in only because it claimed it was required by law to discharge persons who had been removed as members of the union for non-payment of dues," the controversy was essentially between the employee and the union, with the railroad only incidentally involved. We think the principle applicable in the present case. Rumbaugh has joined the railroad to his discrimination charge only because he is claiming that, in consequence of its active participation in the union's discriminatory conduct, he was unlawfully discharged. For this reason the Cunningham holding is apposite.[8]
 
 
 28
 Furthermore, Cunningham is in accordance with the salutary principles of avoiding a multiplicity of suits and expediting the final determination of litigation which are the foundation of Rule 20(a), Fed.R.Civ.P. Because a railroad is not an indispensable party to an employee's action against the union for invidious discrimination, as the Supreme Court held in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1950), the joinder is permissive and is governed by the following standard:
 
 
 29
 "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action * * *." Rule 20(a), Fed.R.Civ.P.
 
 
 30
 Under this rule joinder of parties-defendant is governed by the concepts of "same transaction" and "common question of law or fact."[9] The allegations here satisfy these requirements.
 
 
 Judicial Interpretation of the Collective Agreement Is Not Forbidden
 
 
 31
 Though resolution of the issue whether or not Rumbaugh is a supervisor may require an interpretation of the collective bargaining agreement, the federal courts are not ousted from their function merely because, under certain circumstances, interpretation is delegated to the Board.[10] Here, as we have shown, the Board lacks jurisdiction. This being so, and the cause of action for invidious discrimination being cognizable by the federal courts, they have the power — and the duty — to interpret the agreement. Otherwise there would be no forum, judicial or administrative, competent to grant relief.
 
 
 Jurisdiction of the National Mediation Board
 
 
 32
 We also find that the National Mediation Board is without jurisdiction over this case. The Railway Labor Act, 45 U.S.C.A. § 152 Ninth, provides:
 
 
 33
 "If any dispute shall arise among a carrier's employees as to who are the representatives of such employees * * * it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties * * * the name or names of the individuals or organizations that have been designated and authorized to represent the employees * * *."
 
 
 34
 The case of Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 323, 64 S.Ct. 95, 88 L.Ed. 61 (1943), makes it clear that the jurisdiction of the National Mediation Board is limited to disputes between rival employee representatives.[11] The Board is limited to resolving jurisdictional disputes and settling controversies between unions as to where "the authority of one craft ends and the other begins or of the zones where they have joint authority." General Committee of Adjustment v. Missouri-K.-T. R. R., 320 U.S. 323, 334-335, 64 S.Ct. 146, 88 L.Ed. 76 (1943). The Board's jurisdiction does not extend to controversies, such as the one now under consideration, between an employee and his bargaining agent.
 
 
 35
 Since neither the Railroad Adjustment Board nor the National Mediation Board is the proper forum for this case, we hold that the District Court erred in dismissing the complaint for lack of subjectmatter jurisdiction without first hearing evidence on the question of Rumbaugh's employment status. Should the District Court find, after examining the facts, that Rumbaugh was not a supervisor, then the action for invidious discrimination should be heard on the merits. Should it find that he was a supervisor, and therefore not within the unit represented by the union, a motion to dismiss could then properly be entertained.
 
 CLAIM AGAINST THE RAILROAD
 
 36
 Relying upon the established doctrine that a discharged railroad employee may at his option challenge the validity of his discharge before the Railroad Adjustment Board and seek reinstatement and back pay or, after accepting the dismissal as final, bring a civil suit against the railroad for unlawful discharge,[12] Rumbaugh further asserted in his complaint that he was electing to pursue the latter course. He also joined the union as a defendant because it wrongfully procured his discharge by the railroad.
 
 
 37
 While it is indisputable that a claim for wrongful discharge is judicially cognizable, an action of this type is essentially one at common law for breach of contract and does not arise under the Railway Labor Act. Consequently, original federal jurisdiction can attach only when there is diversity of citizenship.[13] Since, as the District Court found, there is a "patent lack of diversity between the parties," no federal jurisdiction exists over Rumbaugh's claim for wrongful discharge unless the judicially created doctrine of "pendent jurisdiction" may be invoked.
 
 
 38
 The origin of this doctrine is generally attributed to the case of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). In broad terms it provides that original jurisdiction resting on the plaintiff's federal claim extends to any nonfederal claim that he may have against the same defendant provided that the federal question is substantial and the two claims together constitute a "single cause of action."[14] Application of the doctrine is appropriate in this case. Both the federal and the nonfederal claims are asserted by the same plaintiff against the same defendant.[15] The complaint presents one set of operative facts to support the two claims, thereby stating a "single cause of action."[16] Furthermore, it cannot be said that the federal claim is "obviously without merit," or clearly foreclosed by prior Supreme Court decisions,[17] or a matter that should be dismissed on the pleadings alone without presentation of some evidence.[18] By any of these standards of substantiality, Rumbaugh has alleged a nonfrivolous claim.[19]
 
 THE CONSPIRACY CLAIM
 
 39
 In addition to the independent claims against the defendants, Rumbaugh avers in his complaint that the railroad "did unlawfully join in the actions of the unions * * * and did conspire with the unions to obtain the discharge of the complainant and the damage to his property rights." Although no federal statute is cited which would authorize a district court to entertain such a common law action,[20] the doctrine of pendent jurisdiction is again appropriate for this purpose in the circumstances set up by the complaint.[21]
 
 CONCLUSION
 
 40
 For the above reasons we reverse the District Court's order dismissing the complaint without a hearing for lack of subject-matter jurisdiction. The alleged breach of the duty of fair representation presents a substantial claim arising under federal law, appropriately invoking the federal court's jurisdiction of the subject matter. The nonfederal claims — wrongful discharge and conspiracy — may also be entertained under the doctrine of pendent jurisdiction. Accordingly, we remand the case for further proceedings consistent with this opinion.
 
 
 41
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 An affirmative answer to either question could well enable plaintiff to resort to a federal forum since, under the doctrine of pendent jurisdiction, a federal court's jurisdiction based on a federal claim extends to any nonfederal claim in the case if the claims constitute a single cause of action. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); see 1 Barron & Holtzoff, Federal Practice and Procedure § 23, at 97-102 (1960); Note, 62 Colum.L.Rev. 1018 (1962); cf. United Mine Workers v. Meadow Creek Coal Co., 263 F.2d 52, 59-60 (6th Cir.), cert. denied, 359 U.S. 1013, 79 S.Ct. 1149, 3 L. Ed.2d 1038 (1959)
 
 
 [2]
 See also Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S. Ct. 235, 89 L.Ed. 187 (1944); Graham v. Brotherhood of Locomotive Firemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); cf. Syres v. Oil Workers International Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955)
 
 
 [3]
 See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191, 198 n. 15 (4th Cir. 1963); Blumrosen, "The Worker and Three Phases of Unionism," 61 Mich. L.Rev. 1435, 1470 (1963)
 
 
 [4]
 See also Conley v. Gibson, 355 U.S. 41, 42, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Syres v. Oil Workers Int'l Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 affirming 223 F.2d 739, 742-743 (5th Cir. 1955); Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Wallace Corp. v. N. L. R. B., 323 U.S. 248, 255, 65 S.Ct. 238, 89 L.Ed. 216 (1944); Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191, 197 (4th Cir. 1963); Hostetler v. Brotherhood of Railroad Trainmen, 287 F.2d 457, 458 (4th Cir. 1961)
 
 
 [5]
 Ours is not a case where the complaint presents only conclusions of fact unsupported by allegations of specific facts upon which the conclusions rest such that the facts cannot be regarded as well pleaded. See Homan Mfg. Co. v. Russo, 233 F.2d 547, 550 (7th Cir. 1956); Rishel v. Pacific Mut. Life Ins. Co., 78 F.2d 881, 886 (10th Cir. 1935)
 Nor is it a case of legal conclusions cast in the form of factual allegations. See Pauling v. McElroy, 107 U.S.App.D.C. 372, 278 F.2d 252, 254 (D.C.Cir.1960).
 
 
 [6]
 See Brotherhood of Railroad Trainmen v. Central of G. Ry., 305 F.2d 605 (5th Cir. 1962); Koelker v. Baltimore & O. R. R., 140 F.Supp. 887, 890 (E.D.Pa.1956); Hawn v. American S.S. Co., 26 F.Supp. 428 (W.D.N.Y.1939) (evidence of plaintiff's status as a "seaman")
 
 
 [7]
 Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 213, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Graham v. Brotherhood of Locomotive Firemen, 338 U.S. 232, 239, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 774, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Order of Railway Conductors v. Southern Railway, 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811 (1950); see Pennsylvania R. R. v. Day, 360 U.S. 548, 550, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959); Haley v. Childers, 314 F.2d 610, 615-617 (8th Cir.1963); Gainey v. Brotherhood of Ry. & S.S. Clerks, 275 F.2d 342, 344 (3d Cir. 1960); cf. Felter v. Southern Pac. Co., 359 U.S. 326, 327 n. 3, 79 S.Ct. 326, 3 L.Ed.2d 854 (1959); Brotherhood of Locomotive Engineers v. Louisville & N. R. R., 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Britton v. Atlantic C. L. R. R., 303 F.2d 274 (5th Cir. 1962); Ferro v. Railway Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961)
 The union, however, asserts that two Supreme Court decisions cast doubt on the above-stated rule. But we think that the Court in these cases took great pains to reaffirm Steele and its interpretation of the statute. In the first, Slocum v. Delaware, L. & W. R. R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), the Court held that a dispute between two unions concerning the scope of their respective agreements could not be resolved in a state court on a motion by the railroad for a declaratory judgment because such controversies are within the exclusive competency of the Adjustment Board, the agency authorized to settle "railroad-employee disputes growing out of the interpretation of existing agreements." Id. 339 U.S. at 243, 70 S.Ct. at 579, 94 L.Ed. 795. But in an accompanying footnote, id. 339 U.S. at 244 n. 7, 70 S.Ct. at 579, 94 L.Ed. 795 the Court emphasized that "We are not confronted here with any disagreement or conflict in interest between an employee and his bargaining representative, as in Steele v. Louisville & N. R. Co., 323 U.S. 192 [65 S.Ct. 226, 89 L.Ed. 173.]"
 In a second case, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), it was stated that:
 "This case involves no dispute between employee and employer but to the contrary is a suit by employees against the bargaining agent to enforce their statutory right not to be unfairly discriminated against by it in bargaining. [footnote omitted] The Adjustment Board has no power under § 3 First (i) or any other provision of the Act to protect them from such discrimination."
 Specific reference to the jurisdictional distinction between employee-employer suits and employee-bargaining agent actions was again made, the Court stating in footnote 4, page 44, of 355 U.S., page 101 of 78 S.Ct., 2 L.Ed.2d 80, that "[f]or this reason the decision in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, is not applicable here."
 
 
 [8]
 Later in this opinion we deal with the separate claim against the railroad for wrongful discharge
 
 
 [9]
 See generally 2 Barron & Holtzoff, Federal Practice and Procedure 533 (1961); 3 Moore, Federal Practice par. 20.06 (1948); Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926) ("`Transaction' [as used in Rule 20(a)] is a word of flexible meaning. It may comprehend a series of many occurrences * * *.")
 
 
 [10]
 See Heisler v. Parsons, 312 F.2d 172, 176 (7th Cir. 1962); cf. Virginian Ry. v. System Fed'n No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); Brotherhood of Locomotive Firemen v. Northern Pac. Ry., 274 F.2d 641 (8th Cir. 1960); Switchmen's Union v. Southern Pac. Co., 253 F.2d 81 (9th Cir. 1957); Brotherhood of Ry. & S.S. Clerks v. Atlantic C. L. R. R., 201 F.2d 36 (4th Cir. 1953)
 The fact that interpretation of collective agreements was involved has not in the past prevented courts from retaining jurisdiction of actions to enforce the duty of fair representation. Conley v. Gibson, 355 U.S. 41, 44-45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191, 199 (4th Cir. 1963).
 
 
 [11]
 See, e. g., General Committee of Adjustment v. Missouri-K.-T. R. R., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); Flight Eng'rs Int'l Ass'n v. Eastern Air Lines, Inc., 311 F.2d 745, 747 (2d Cir. 1963); Division No. 14, Order of Railroad Telegraphers v. Leighty, 298 F.2d 17, 19-20 (4th Cir. 1962); Hester v. Brotherhood of Railroad Trainmen, 206 F.2d 279 (8th Cir. 1953); Brotherhood of Railway & S.S. Clerks v. Atlantic C. L. R. R., 201 F.2d 36, 38-39 (4th Cir. 1953); O'Donnell v. Pan American World Airways, Inc., 200 F.2d 929, 931 (2d Cir. 1953); Rose v. Brotherhood of Railway & S.S. Clerks, 181 F.2d 944, 946 (4th Cir. 1950); Nashville, C. & St. L. Ry. v. Railway Employees Dep't, 93 F.2d 340 (6th Cir. 1937); Brotherhood of Railroad Trainmen v. National Mediation Board, 66 App. D.C. 375, 88 F.2d 757 (D.C.Cir. 1936)
 
 
 [12]
 Transcontinental & Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953); Slocum v. Delaware, L. & W. R. R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Moore v. Illinois Cent. R. R., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941); see, e. g., Roberts v. Lehigh & N. E. Ry., 323 F.2d 219, 223 n. 5 (3d Cir. 1963); Haley v. Childers, 314 F.2d 610, 614-15 (8th Cir. 1963); Cook v. Missouri Pac. R. R., 263 F.2d 954, 957 (5th Cir. 1959); Cranston v. Baltimore & O. R. R., 258 F.2d 630, 631 (3d Cir. 1958); Condol v. Baltimore & O. R. R., 91 U.S.App.D.C. 255, 199 F.2d 400 (D.C. Cir. 1952); Cepero v. Pan American Airways, Inc., 195 F.2d 453 (1st Cir. 1952)
 
 
 [13]
 Duplisea v. Maine Cent. R. R., 260 F.2d 495 (1st Cir. 1958); Stack v. New York Cent. R. R., 258 F.2d 739, 741-742 (2d Cir. 1958); Smithey v. St. Louis S. Ry., 237 F.2d 637 (8th Cir. 1956); Broady v. Illinois Cent. Ry., 191 F.2d 73, 78 (7th Cir.), cert. denied, 342 U.S. 897, 72 S.Ct. 231, 96 L.Ed. 672 (1951); Bohannon v. Reading Co., 168 F.Supp. 662 (E.D.Pa. 1958); see generally Kroner, "Minor Disputes Under the Railway Labor Act," 37 N.Y.U.L.Rev. 41, 59 (1962)
 
 
 [14]
 See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Lincoln Gas & Elec. Light Co. v. City of Lincoln, 250 U.S. 256, 39 S.Ct. 454, 63 L.Ed. 968 (1919); Siler v. Louisville & N. R. R., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909); Taussig v. Wellington Fund, Inc., 313 F.2d 472 (3d Cir.), cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963), noted in 49 Va. L.Rev. 1224 (1963); 1 Barron & Holtzoff, Federal Practice and Procedure § 23, at 97-102 (1960); Note, 62 Colum.L.Rev. 1018 (1962); Note, 71 Harv.L.Rev. 513 (1958)
 
 
 [15]
 See New Orleans Pub. Belt R. R. v. Wallace, 173 F.2d 145 (5th Cir. 1949); Pearce v. Pennsylvania R. R., 162 F.2d 524 (3d Cir.), cert. denied, 332 U.S. 765, 68 S.Ct. 71, 92 L.Ed. 350 (1947); cf. Oliver J. Olson & Co. v. Marine Terminals Corp., 215 F.Supp. 490, 492 (N.D. Cal.1962); United Shoe Workers v. Brooks Shoe Mfg. Co., 191 F.Supp. 288 (E.D.Pa.1960); Note, 62 Colum.L.Rev. 1018, 1027 (1962)
 
 
 [16]
 Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); see, e. g., Landstrom v. Thorpe, 189 F.2d 46, 51, 26 A.L.R.2d 1170 (8th Cir.), cert. denied, 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620 (1951); Kleinman v. Betty Dain Creations, Inc., 189 F.2d 546, 548 (2d Cir. 1951); French Renovating Co. v. Ray Renovating Co., 170 F.2d 945, 947 (6th Cir. 1948). The Supreme Court employed the "substantially identical" language in a reapplication of the Hurn doctrine. Armstrong Paint & Varnish v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195 (1938)
 
 
 [17]
 E.g., Levering & Garrigues Co., v. Morrin, 289 U.S. 103, 105-106, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); Hannis Distilling Co. v. Mayor, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910). See Binderup v. Pathe Exch. Inc., 263 U.S. 291, 306, 44 S.Ct. 96, 68 L.Ed. 308 (1923); Milheim v. Moffat Tunnel Improvement Dist., 262 U.S. 710, 717, 43 S.Ct. 694, 67 L.Ed. 1194 (1923); Strachman v. Palmer, 177 F.2d 427, 432, 12 A.L.R.2d 687 (1st Cir. 1949) (Magruder, J., concurring, questions the "foreclosure by previous decision" aspect of the test.)
 
 
 [18]
 E. g., Robinson v. Stanley Home Products, Inc., 272 F.2d 601 (1st Cir. 1959); Massachusetts Universalist Convention v. Hildreth & Rogers Co., 183 F.2d 497 (1st Cir. 1950); Pure Oil Co. v. Puritan Oil Co., 127 F.2d 6 (2d Cir. 1942). See generally Comment, 46 Ill.L.Rev. 646 (1951)
 
 
 [19]
 Presentation of a substantial claim for purposes of the Hurn doctrine does not mean that it is valid on the merits. And the fact that it is subsequently found invalid on the merits does not affect the court's jurisdiction. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Note, 49 Va.L.Rev. 1224, 1228 n. 9 (1963)
 
 
 [20]
 It does not appear that Rumbaugh is attempting to invoke the Civil Rights Act, 42 U.S.C.A. § 1985(3). Cf. Walker v. Bank of America, 268 F.2d 16 (9th Cir. 1959); Schatte v. International Alliance, 182 F.2d 158 (9th Cir. 1950); Lankford v. International Brotherhood of Elec. Workers, 196 F.Supp. 661 (N.D. Ala.1960)
 
 
 [21]
 United Mine Workers v. Meadow Creek Coal Co., 263 F.2d 52 (6th Cir.), cert. denied, 359 U.S. 1013, 79 S.Ct. 1149, 3 L. Ed.2d 1083 (1959) (nonfederal conspiracy claim supported by federal secondary boycott claim); Flame Coal Co. v. United Mine Workers, 303 F.2d 39, 42 (6th Cir.), cert. denied, 371 U.S. 891, 83 S.Ct. 186, 9 L.Ed.2d 125 (1962); United Mine Workers v. Osborne Mining Co., 279 F.2d 716, 724 (6th Cir.), cert. denied, 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 103 (1960); cf. Wertanen v. Welduction Corp., 151 F.Supp. 440 (E.D.Mich.1957)
 
 
 ON PETITIONS FOR REHEARING
 PER CURIAM:
 
 42
 In their Petitions for Rehearing the appellees call attention to a factual inaccuracy in the opinion which, though legally insignificant, bears correction. According to the original complaint Rumbaugh approached an agent of the company on or about July 16, 1959, with an inquiry about his rights under the Railway Labor Act, not a "union agent" as we recited initially. The misstatement has been corrected. That the union is the primary object of Rumbaugh's grievances appears convincingly in other portions of the complaint. The reasoning and result of our decision remain unaltered.
 
 
 43
 The core of appellees' petitions for rehearing is the court's consideration sua sponte of the doctrine of pendent jurisdiction, which was not discussed in the briefs and oral arguments. Failure of the appellees to present this point before this time is no ground for a rehearing.
 
 
 44
 The fundamental question on the appeal is the propriety of the District Court's dismissal of the suit for lack of subject-matter jurisdiction. We concluded that there was original jurisdiction of the claim for breach of the duty of fair representation and, further, that there was ancillary jurisdiction of the remaining claims. This result is not inconsistent with the line of cases fostered by Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 737 [738], 6 L.Ed. 204 (1824), and discussed in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). It goes without saying that a court has jurisdiction to determine its own jurisdiction. United States v. United Mine Workers, 330 U.S. 258, 292 n. 57, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Wright, Federal Courts, 44-47 (1963 ed.). Furthermore, the reasons assigned by the Railroad opposing application of the doctrine of pendent jurisdiction are all dealt with in the opinion and need no further elaboration. The additional cases cited in the petition of the union are either not in point, or cumulative, or distinguishable.
 
 
 45
 As to the union's contention that under West Virginia law there can be no cause of action for conspiracy against an unincorporated labor union, we need only say that this contention, if it has merit, may be raised as an affirmative defense on remand. It does not, however, undermine the ancillary federal jurisdiction which attaches to the non-federal claim. Other defenses which the union has as yet not asserted may also be raised in the District Court. Such defenses as lack of venue, want of legal service and failure to state a claim upon which relief can be granted, which were not considered by the District Court, we, of course, decline to pass upon.
 
 
 46
 The Petitions for Rehearing are denied.