A. A. WEBB, Appellant,

v.

Robert W. BLADEN and Bricklayers Union No. 1, Appellees.

No. 72–1930.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1973.

Decided June 11, 1973.

Harry P. Friedlander, Arlington, Va. (Friedlander, Friedlander & Brooks, Mark P. Friedlander, Mark P. Friedlander, Jr., Blaine P. Friedlander, Marshall H. Brooks and Jerome P. Friedlander, II, Arlington, Va., on brief), for appellant.

Ronald Rosenberg, Washington, D. C. (William W. Koontz, Alexandria, Va., and Van Arkel & Kaiser, Washington, D. C., on brief), for appellees.

Before HAYNSWORTH, WINTER and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

The genesis of this case was a dispute between A. A. Webb, a masonry contractor, and the Bricklayers Union No. 1 of the District of Columbia (union) con-

cerning the terms of their collective bargaining agreement and Webb's use of non-union labor on certain construction projects. After expiration of this agreement and the union's refusal to renew it, the union advised two of Webb's general contractors that no union bricklayers would be permitted to work on their projects unless the general contractors terminated their contracts with Webb. The general contractors bowed to this union pressure.

Webb then brought suit for damages in the district court against the union and its business manager, Bladen. Webb's complaint alleged five causes of action, only one of which was based on federal law: Count I alleged that the union violated the federal antitrust laws, 15 U.S.C. § 1 et seq. (1963); Count II alleged violation of Virginia's antitrust laws, 9 Va.Code Ann. § 59.1–22 et seq. (1973); Count III alleged a state common law action for restraint of trade; Count IV alleged tortious interference with contract; and Count V alleged violation of Virginia's "right to work" laws, 6 Va.Code Ann. § 40.1–58 et seq. (1970). Webb averred that the district court had jurisdiction pursuant to the federal antitrust laws, 15 U.S.C. § 15, and Webb admitted that no diversity of citizenship existed between the parties. After a trial, the district court dismissed all five counts. We affirm the dismissal of Count I, but vacate and remand as to the remaining counts.

### I.

■ A labor organization is immune from liability under the federal antitrust laws unless it combines or conspires with a non-labor organization to restrain trade in pursuit of a goal which is not the legitimate subject of a bona fide labor dispute. Clayton Act § 20, 29 U.S.C. § 52 (1973); Norris-LaGuardia Act § 4, 29 U.S.C. § 104 (1973). United States v. Hutcheson, 312 U.S. 219, 232, 61 S.Ct. 463, 85 L.Ed. 788 (1941); Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 808–809, 65 S.Ct. 1533, 89 L. Ed. 1939 (1945); United Mine Workers v. Pennington, 381 U.S. 657, 661–663, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Meat Cutters Union v. Jewel Tea Co., 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965); Federation of Musicians v. Carroll, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968). Webb contends that the union conspired with the general contractors to drive him out of business. But the district court found as a fact that no conspiracy existed between the union and the general contractors, who, it found, reluctantly terminated their contracts with Webb at the union's insistence. The evidence demonstrates that the general contractors resisted the union, and that one general contractor, Merando, interceded on Webb's behalf. At one point, even counsel for Webb conceded that the general contractors "were not willfully, deliberately, or knowingly participants in a conspiracy," although he later attempted to repudiate this characterization of the facts.

■ On this record, we conclude that the district court's finding that the union acted alone when it pressured the general contractors is not clearly erroneous. See Cedar Crest Hats, Inc. v. United Hatters, Cap & Mil. Workers I. U., 362 F.2d 322 (5 Cir. 1966). Since a union is immune from federal antitrust liability if it acts alone, the district court correctly dismissed Count I. [1]

### II.

After dismissing the federal antitrust count on the merits, the district court dismissed the four state law counts, holding: "as there is no diversity between the plaintiff and the union defendant. This Court lacks jurisdiction to hear and determine this phase of the case."

[1]. Since we affirm the finding that the union acted alone, it is unnecessary to discuss the second element bearing on the union's immunity, whether its actions were related to a legitimate "labor dispute." Cf. Hunt v. Crumboch, 325 U.S. 821, 65 S.Ct. 1545, 89 L.Ed. 1954 (1945); Cedar Crest Hats, supra.

Neither Webb nor the district court adverted to the possibility that the district court might have pendent jurisdiction over the state claims. In 1964, we said in Rumbaugh v. Winifrede Railroad Co., 4 Cir., 331 F.2d 530, cert. denied 379 U.S. 929, 85 S.Ct. 322, 13 L.Ed. 2d 341 (1964), that a district court had jurisdiction to decide federal and non-federal claims if they stated a "single cause of action," and if "it cannot be said that the federal claim is 'obviously without merit,' or clearly foreclosed by prior Supreme Court decisions, or a matter that should be dismissed on the pleadings alone without presentation of some evidence." 331 F.2d at 539–540 (footnotes omitted). *Rumbaugh* relied on Hurn v. Oursler, 289 U.S. 238, 53 S. Ct. 586, 77 L.Ed. 1148 (1933). Application of the quoted language might lead to the conclusion that the district court did not have pendent jurisdiction to decide the state claims.

■ Some two years later in United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court abandoned the *Hurn-Rumbaugh* mode of analysis as "unnecessarily grudging." *Gibbs* held that as a matter of Article III judicial power, a federal court could adjudicate all issues in a "case" having both federal and state claims if those claims derived from a "common nucleus of operative fact . . . assuming substantiality of the federal issues." *Id.*, 383 U.S. at 725, 86 S.Ct. at 1138. Since Webb's state claims differed from his federal claim only with respect to their legal theories and not with respect to their operative factual premises, the district court had judicial power to decide the whole case under *Gibbs'* broadened doctrine of pendent jurisdiction.[2]

■■ However, *Gibbs* stressed that although a federal court might have the power to adjudicate pendent state claims, it also has discretion to dismiss them without prejudice:

That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . .. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

*Id.*, at 726, 86 S.Ct. at 1139 (footnotes omitted). *See* Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L. Ed.2d 596 (1973). The district court may exercise its discretion to dismiss state claims at any point during the proceedings. Thus, although the district court should weigh the fact of already completed litigation, it may nevertheless often be proper to dismiss state claims after trial. *Id.*, 383 U.S. at 727, 86 S.Ct. 1130. Therefore, the district court had discretion to dismiss the state law claims asserted in Counts II–V.

### III.

■ The district court expressed itself as compelled by the absence of diversity jurisdiction to dismiss Counts II–V. This view was erroneous. Under *Gibbs* the district court had Article III jurisdiction to adjudicate the whole case.[3] The district court was therefore not compelled to dismiss Counts II–V for this reason, although its decision to do so might very well have been a proper exercise of its discretion had that discretion been exercised.

2. In view of our disposition of this case, we find no occasion to express any view concerning possible pre-emption by the N.L.R.B. *See generally* San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).

3. *See* note 2, supra.

A failure to recognize the existence of authority to exercise discretion does not amount to its exercise. We therefore conclude that in order to afford the district court the opportunity to exercise its discretion in the first instance, we must vacate the dismissal of Counts II–V and remand for proceedings consistent with this opinion. *See Gibbs,* supra; *Moor,* supra.

Affirmed in part; vacated in part and remanded.